IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INCARCERATED ENTERTAINMENT, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:18-cv-480-MAK |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| CNBC LLC, NBCUNIVERSAL MEDIA, LLC, | ) |
| KURTIS PRODUCTIONS, LTD., HULU, LLC, | ) |
| GOOGLE LLC, APPLE INC., and | ) |
| AMAZON.COM, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS KURTIS PRODUCTIONS, LTD., NBCUNIVERSAL MEDIA, LLC,
AND CNBC LLC'S MOTION TO DISMISS
THE LANHAM ACT CLAIM IN PLAINTIFF'S COMPLAINT**

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Stamoulis & Weinblatt LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff
Incarcerated Entertainment, LLC*

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE ...................................................................................................1

II. SUMMARY OF THE ARGUMENT..............................................................................1

III. STATEMENT OF FACTS................................................................................................2

IV. LEGAL STANDARD .......................................................................................................5

    A. Rule 12(b)(6)...............................................................................................................5

    B. Lanham Act ................................................................................................................5

V. ARGUMENT.....................................................................................................................7

    A. Defendants' Literally False Advertising Deceived Viewers......................................7

    B. Defendants' Deception Was Likely To Influence Viewership and the Advertising Appeared Throughout the United States......................................................................9

    C. IE Has Been Injured by Defendants' Conduct ..........................................................9

    D. The Gordon & Breach Test Is Satisfied....................................................................10

    E. Defendants' Arguments Regarding Defamation and Related Tort Claims Are a Red-Herring.................................................................................................................11

IV. CONCLUSION................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Rumsfeld*, 450 F. Supp. 2d 440 (D. Del. 2006) ...................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................5

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) ..............................................................6

*Byrd v. Bates*, 220 F.2d 480 (5th Cir. 1955) .......................................................................................5

*Erickson v. Pardus*, 551 U.S. 89 (2007).........................................................................................5, 11

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521
    (S.D.N.Y. 1994) .............................................................................................................................1, 6

*Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995)..............................................................7

*Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*, No. CIV. A.
    95-3997, 1995 WL 723186 (E.D. Pa. Nov. 14, 1995).......................................................................6

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256 (11th Cir. 2004)....................................................5

*Hitt v. City of Pasadena*, 561 F.2d 606 (5th Cir. 1977).......................................................................5

*Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220
    (M.D. Fla. 2017)..............................................................................................................................6

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) ........5

*Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer
    Pharmaceuticals, Inc.*, 19 F.3d 125 (3d Cir. 1994) .........................................................................6

*Lacoff v. Buena Vista Publishing*, 705 N.Y.S.2d 183 (N.Y. Sup. Ct. N.Y. Cty. 2000) ...................8, 9

*Lane v. Random House, Inc.*, 985 F. Supp. 141 (D.D.C. 1995) ..........................................................8

*O'Grady v. Twentieth Century Fox Film Corp.*, No. 5:02CV173, 2003 WL 24174616
    (E.D. Tex. Dec. 19, 2003) ..............................................................................................................10

*Reybold Group of Companies, Inc. v. Does 1–20*, 323 F.R.D. 205 (D. Del. 2017) ............................6

*United Industries Corp. v. Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998)................................................5

*United States of Am. v. Merrill*, Case 1:08-cr-20574-JAL (S.D. Fla. May 2, 2011) ............................ 7

**Statutes**

15 U.S.C. § 1125 ................................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................................ 1, 5

**I.     NATURE AND STAGE**

On March 29, 2018, Plaintiff Incarcerated Entertainment, LLC ("IE") filed its complaint against Defendants CNBC LLC ("CNBC"), NBCUniversal Media, LLC ("NBCU"), Kurtis Productions, Ltd. ("Kurtis Productions"), Hulu, LLC, Google LLC, Apple Inc., and Amazon.com, Inc. alleging copyright infringement against all defendants and alleging unfair competition against Defendants CNBC, NBCU and Kurtis Productions.  (D.I. 1.)  Defendants CNBC LLC, NBCU and Kurtis Productions (collectively, "Defendants") moved to dismiss IE's Lanham Act claim under Federal Rule of Civil Procedure 12(b)(6).  (D.I. 37.)  IE submits this opposition in response to Defendant's Motion.

**II.    SUMMARY OF THE ARGUMENT**

1.     IE's Lanham Act claim is an unfair competition allegation based on Defendants' false advertising that the *American Greed* episode The "Real 'War Dogs'" is a true story regarding Diveroli. It is not, and the false assertion that AEY sold "bad" ammunition is proof of that it is not a true story.

2.     Defendants' false advertising was created to increase viewership, and they deceived viewers to believe the *American Greed* episode The "Real 'War Dogs'" is a true depiction of the events in the episode when it is not.

3.     IE has been injured by Defendants' conduct.  It has decreased book sales regarding Diveroli's life story and discussions with a third party pertaining to the production and distribution of a documentary based on the material in the book "Once a Gun Runner . . ." and Diveroli's life story faltered after the *American Greed* advertising and episode The "Real 'War Dogs'" aired.

4.     Defendants' advertisements are commercial speech and the allegations in the complaint satisfy the *Gordon & Breach* test.  Defendants' Motion should be denied.

## III.     STATEMENT OF FACTS

Because IE's copyright infringement allegations are not at issue in Defendant's motion, IE sets forth the relevant facts pertaining to its Lanham Act claim.

At the age of 18, Efraim Diveroli ("Diveroli") started a small business specializing in arms, ammunition trading, and bidding on small United States Government defense contracts. Using one of his father's shuttered companies, AEY, Inc. ("AEY"), Diveroli worked on a laptop out of his one-room apartment bidding on United States Government contracts through www.FBO.gov. (D.I. 1 at ¶ 14.) Diveroli steadily increased his contracts over the course of the next three years and developed a track record of success in satisfying over 100 United States Government contracts for weapons and munitions. (*Id.* at ¶ 15.)

By 2007, the United States Government's war effort in Afghanistan was in full force. The allied forces decided to arm the Afghans for purposes of fighting the Taliban and Al Qaeda, so the U.S. Government bid out a massive contract for purposes of arming the fledgling Afghan army (and its related police forces). Although large contractors like Northrop Grumman and Lockheed prepared extensive bids for the projects, ultimately the United States Government—after significant vetting—chose Diveroli and AEY to fulfill these massive $298 million weapons and munitions contracts. (*Id.* at ¶ 16.)

On March 27, 2008, the United States Government suspended AEY's contracts based upon allegations that AEY had violated pre-existing arms embargos. Part of those accusations were that certain ammunitions – none of which were defective – supplied to the Afghans and the United States Army were sourced from China in violation of an embargo. Diveroli, who at the time was just 22 years old, was indicted by a Miami Federal grand jury based upon fraud charges in connection with the provision of ammunition to the Afghans. (*Id.* at ¶ 18.) Rather than defend the

legality of his actions – in that Diveroli had been selling ammunition acquired by his third-party sources prior to the 1989 Chinese munitions embargo – Diveroli decided for various reasons to take a four-year plea deal to plead guilty to a single count of conspiracy.  (*Id.* at ¶ 19.)  Shortly after entering his plea deal, Diveroli began serving his forty-eight-month sentence.  Between early 2011 and October 2011, Diveroli served time in the Seminole County, Florida jail.  (*Id.* at ¶ 20.)

IE owns the rights to Diveroli's life story and intellectual property.  (*Id.* at ¶ 215.)  In January 2012, Diveroli authored and wrote his manuscript about his experiences being a gun runner; the manuscript is entitled "Once a Gun Runner . . ." (the "January 2012 Manuscript").  (*Id.* at ¶ 216.)  From November 2013 to June 2014, Diveroli expanded his original January 2012 Manuscript into a full draft.  By February 2014, that full draft (the "February 2014 Manuscript") was sufficiently complete for marketing Diveroli's life rights.  (*Id.* at ¶ 217.)

*American Greed* is a for-profit made-for-television crime series advertised as a "shocking true crime series [that] examines the dark side of the American Dream."[1]  (*Id.* at ¶ 33; D.I. 1-13.)  It is promoted as "tak[ing] you deep inside shocking *true* stories of brazen con artists who thrive on stealing fortunes, ruining and even taking lives."  (D.I. 1 at ¶ 223; D.I. 1-14.)

On January 9, 2017, counsel for IE and Diveroli sent a letter to Defendant Kurtis Productions regarding an upcoming episode of *American Greed* that was to feature Diveroli's story. (D.I. 1 at ¶ 35; D.I. 1-15.)  The letter sought to "avoid any potential legal issues in connection with the promotion and broadcast of *American Greed*" and requested an "opportunity to view the advertisements and episode prior to their broadcast."  (D.I. 36; D.I. 1-15.)

The advertisements for the *American Greed* episode "The Real 'War Dogs'" falsely stated

---

[1] *American Greed* is produced for Defendants CNBC and NBCU by Defendant Kurtis Productions.  (D.I. 1 at ¶ 34; D.I. 1-14.)

3

Diveroli sold "bad ammunition" to the military and showed images of U.S. military personnel. (D.I. 1 at ¶ 219 (citing The Real War Dogs | American Greed | CNBC Prime (available at https://www.youtube.com/watch?v=4wRYtva_AnY (last accessed Mar. 20, 2018)); Next On | American Greed: "The Real 'War Dogs'" (available at https://www.cnbc.com/video/2017/01/24/next-on-american-greed-the-real-war-dogs.html (last accessed Mar. 20, 2018))[2]). These statements about Diveroli selling "bad ammunition" to the U.S. military were intended to entice viewers to watch the episode "The Real 'War Dogs.'" (D.I. 1 at ¶ 220.) In addition, since this statement is untrue, the advertising for *American Greed* that it is a "shocking true crime series [that] examines the dark side of the American Dream" (*id.* at ¶ 33; D.I. 1-13.) and "tak[ing] you deep inside shocking *true* stories of brazen con artists who thrive on stealing fortunes, ruining and even taking lives" (D.I. 1 at ¶ 223; D.I. 1-14), likewise is untrue.

Based on the advertising surrounding the *American Greed* episode "The Real 'War Dogs,'" consumers who desire to learn Diveroli's true story are likely to watch the episode "The True 'War Dogs,'" rather than purchasing Diveroli's memoir, or watching a documentary based on both the book "Once a Gun Runner . . ." and Diveroli's life story, and learning the truth. (*Id.* at ¶ 224.) Indeed, any reasonable consumer would believe based on the marketing of *American Greed* that the episode "The Real 'War Dogs'" intended to and did depict the factually accurate story of Diveroli. (*Id.* at ¶ 225.) Further, IE had been in discussions with at least one third party beginning in December 2016 pertaining to the production and distribution of a documentary based on the material in the book "Once a Gun Runner . . ." and Diveroli's life story (*id.* at ¶ 222), and after the *American Greed* episode "The Real 'War Dogs'" aired, those discussions ceased.

---

[2] Defendants lodged these two advertisements with the Court. (D.I. 40.)

4

## IV. LEGAL STANDARD

### A. Rule 12(b)(6)

When deciding Rule 12(b)(6) motions, courts look at the allegations of the complaint to determine if "enough facts to state a claim to relief that is plausible on its face" are alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Complaints are not to be dismissed "unless 'it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'" *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)).

### B. Lanham Act

The Lanham Act prohibits false advertising in connection with "***commercial*** advertising or promotion." 15 U.S.C. § 1125(a)(1)(B) (emphasis added). It applies to two types of advertisements: (1) a statement that is "literally false as a factual matter" and (2) a "misleading" statement that may be literally true or ambiguous, but that "implicitly convey[s] a false impression, [is] misleading in context, or [is] likely to deceive consumers." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004) (quoting *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)); *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

To survive a motion to dismiss a Lanham Act false advertising claim, a plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to the defendant's own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Reybold Group of Companies, Inc. v. Does 1–20*, 323 F.R.D. 205, 209-10 (D. Del. 2017) (quoting *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)).

This Court uses the *Gordon & Breach* test to determine whether the representation constitutes "commercial advertising or promotion" under the Lanham Act, and the representation is "commercial advertising or promotion if it "'consist[s] of: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; (4) that is disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.'"  *Id.* at 210 (quoting *Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*, No. CIV. A. 95-3997, 1995 WL 723186, at *3 (E.D. Pa. Nov. 14, 1995) (citing *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)).

Speech "may still be considered commercial if:  (1) the communication is an advertisement, (2) the communication makes reference to a specific product, and (3) the speaker has an economic motivation for the communication."  *Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1228 (M.D. Fla. 2017) (citing *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983)).

## V.     ARGUMENT

### A.     Defendants' Literally False Advertising Deceived Viewers

Defendants advertise *American Greed* as being a "shocking true crime series [that] examines the dark side of the American Dream" (D.I. 1 at ¶ 33; D.I. 1-13), and that "takes you deep inside shocking ***true*** stories of brazen con artists who thrive on stealing fortunes, ruining and even taking lives." (D.I. 1-14 (emphasis added).) None of the ammunition sold to the U.S. government by AEY was defective or faulty (D.I. 1 at ¶ 221; *see also id.* at ¶ 18), and the U.S. government's expert in firearm and tool mark examination confirmed this fact when testifying on December 10, 2010 in *United States of Am. v. Merrill*, Case 1:08-cr-20574-JAL (S.D. Fla.). *See* Tr. of Excerpted Testimony of Jerry Miller from the Jury Trial as to Ralph Merrill held on December 2, 2010, from 2:04 p.m. to 2:41 p.m. before Judge Joan A. Lenard, *United States of Am. v. Merrill*, Case 1:08-cr-20574-JAL (S.D. Fla. May 2, 2011), D.I. 1140 at 21:10 – 22:2, attached hereto as Ex. A (highlighting added).[3] Yet, when advertising the *American Greed* episode "The Real 'War Dogs,'" Defendants falsely stated Diveroli sold "bad ammunition" to the military and showed images of U.S. military personnel, (D.I. 1 at ¶ 219), which was done to entice viewers to view the episode which in turn increased advertising revenue. Advertising the episode as "true" is a statement ***about*** the episode, and is not a statement within the episode, thus, violating the Lanham Act. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) ("The Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services."). In addition, the advertising is literally false as a factual matter – the episode "The Real 'War Dogs'"

---

[3] Ralph Merrill was a co-defendant of Diveroli and IE asks the Court to take judicial notice of this public court filing. *See, e.g., Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006).

7

is not the true story as viewers would believe after seeing the advertising; as alleged in the complaint, "Any reasonable consumer would believe based on the marketing of American Greed that the episode "The Real 'War Dogs'" intended to and did depict the factually accurate story of Diveroli." (D.I. 1 at ¶ 225.) Defendants argument to the contrary are an attempt to confuse the issue.[4]

This is not a situation like *Lane v. Random House, Inc.*, 985 F. Supp. 141 (D.D.C. 1995) – a non-Lanham Act case – where "[t]he contested statement in the Random House advertisement reflects differing interpretations of the murky facts surrounding the Kennedy assassination." *Id.* at 152. Here, Defendants' advertising the episode as being "true" is untrue. An example of how the episode is not true is the statement that Diveroli sold "bad ammunition." None of the ammunition was defective or faulty (D.I. 1 at ¶ 221; *see also id.* at ¶ 18; Ex. A at 21:10 – 22:2 (highlighting added)), and there is nothing open to interpretation. The Lanham Act is to prevent advertising that falsely portrays the product at issue. Defendants' product is the Real War Dogs episode, which is not a true depiction, and Defendants' advertised that it was. Had Defendants' advertised that *American Greed* The "Real 'War Dogs'" is an episode ***based on a true story***, then a Lanham Act claim may not survive; however, they did not advertise in that matter.

In *Lacoff v. Buena Vista Publishing*, 705 N.Y.S.2d 183 (N.Y. Sup. Ct. N.Y. Cty. 2000), a case upon which Defendants rely, no Lanham Act allegation was at issue. Instead, it dealt with

---

[4] Defendants argue that IE's Lanham Act claim "presents an effort to misuse the Lanham Act to challenge the accuracy of a documentary about the conduct of a war that is highly critical of Plaintiff's principal." (D.I. 38 at 17.) This plainly is not the case. Instead, IE accused Defendants' advertising of being false and misleading because the advertising promotes *American Greed* "The Real War Dogs'" as being a true story. The false statement in the advertising and in the episode that AEY sold "bad" ammunition is evidence that the episode is not true.

New York's General Business law and a book's "book cover, the flyleaf and the introduction" that were all part of the book – there was no advertisement. *Id.* at 608. Here, there is advertising that the *American Greed* The "Real 'War Dogs'" episode is a true depiction of events, when the episode is not truthful.

This also is not a situation like the one raised by Defendants regarding Babe Ruth. Although people witnessed Babe Ruth pointing his bat before his infamous home run, no one knew whether he was warming up or pointing to where he was going to hit the ball; writers and commentators speculated as to what Babe Ruth was doing. Here, the ammunition either worked or it did not, and the fact is none of the ammunition was defective (i.e., it worked). (D.I. 1 at ¶ 221; *see also* Ex. A at 21:10 – 22:2 (highlighting added).) There is no speculation or debate on this subject.

### B. Defendants' Deception Was Likely To Influence Viewership and the Advertising Appeared Throughout the United States

Defendants cannot dispute that its advertising for the *American Greed* episode "The Real 'War Dogs'" was broadcast – online and on television – throughout the United States to entice viewers to watch the episode. Otherwise, it would not have created the advertising material. Further, viewers would believe based on the advertising of *American* Greed that the episode "The Real 'War Dogs'" was factually accurate (D.I. 1 at ¶ 225), which was likely to influence viewership.

Defendants also cannot contest that the episode aired throughout the United States on television and online. Thus, the advertised episode traveled in interstate commerce.

### C. IE Has Been Injured by Defendants' Conduct

The Complaint alleges IE's injuries. For example, IE had been in discussions with a third party prior to the advertising and airing of the *American Greed* The "Real 'War Dogs'" episode (D.I. 1 at ¶ 222), and after Defendants' advertising the episode as true and airing the episode, those talks

9

ended. Similarly, "consumers who desire to learn Diveroli's true story are likely to watch the episode "The Real 'War Dogs,'" rather than purchasing Diveroli's memoir, or watching a documentary, (*id.* at ¶ 224), thus injuring IE.

### D. The *Gordon & Breach* Test Is Satisfied

As discussed above, the advertising for the *American Greed* episode "The Real 'War Dogs'" is to entice viewers to watch the episode; the more viewers that watch an episode, the more advertising revenue Defendants are able to achieve. Thus, the advertising at issue plainly is commercial speech.[5]

Next, IE had been in discussions with at least one third party beginning in December 2016 regarding the production and distribution of a documentary based on the material in the book "Once a Gun Runner . . .", which was authored by Diveroli, and Diveroli's life story, both of which are owned by IE. (D.I. 1 at ¶¶ 215, 216-17, 222.) The complaint alleges that based on Defendants' advertising, consumers who want to learn Diveroli's true story are likely to watch Defendants' episode instead of purchasing Diveroli's memoir or watching a documentary based on both the book "Once a Gun Runner . . ." and Diveroli's life story, and learning the truth." (*Id.* at ¶ 224.) Indeed, "[a]ny reasonable consumer would believe based on the marketing of *American Greed* that the episode "The Real 'War Dogs'" intended to and did depict the factually accurate story of Diveroli." (*Id.* at ¶ 225.) And, IE has been injured due to Defendants' actions. (*Id.* at ¶¶ 227-28.) These factual allegations must be accepted as true and the Court must view them in the light most

---

[5] If Defendants argue that their advertising is not commercial speech, the issue of whether the advertising should be *treated* as commercial speech is itself a fact question. *See O'Grady v. Twentieth Century Fox Film Corp.,* No. 5:02CV173, 2003 WL 24174616, at *15 (E.D. Tex. Dec. 19, 2003) (finding "a fact issue whether this is a case about commercial speech . . . .").

favorable to IE. *Erickson*, 551 U.S. at 93-94. Accordingly, IE and Defendants are competitors in the marketplace and IE has suffered damages.

Thus, Defendants' advertising was for the purpose of influencing viewers to watch the episode.

Last, the advertisements were widespread, appearing on the Internet and on television, making them relevant to the targeted audience, and constituting advertisement or promotion within the market.

### E. Defendants' Arguments Regarding Defamation and Related Tort Claims Are a Red-Herring

As is clear from the above, IE's Lanham Act claim is based on Defendants' advertising *American Greed* The "Real 'War Dogs'" episode as a true depiction of Diveroli's story. The episode is not true and the statement about the ammunition being "bad" is one piece of evidence that the episode is not a true depiction. IE recognizes that this is a nuanced claim, but this is not an end-run around defamation or other torts. Instead, this is a plaintiff seeking to address false advertising that impacted its business.

## IV. CONCLUSION

For the foregoing reasons, IE respectfully requests Defendant's Motion to Dismiss be denied, or in the alternative, IE be granted leave to file an amended complaint to plead additional allegations regarding its Lanham Act claim.

| | |
|---|---|
| Dated: July 2, 2018 | STAMOULIS & WEINBLATT LLC |
| | |
| | */s/ Richard C. Weinblatt*<br>Stamatios Stamoulis #4606<br>Richard C. Weinblatt #5080<br>Two Fox Point Centre<br>6 Denny Road, Suite 307<br>Wilmington, DE 19809<br>(302) 999-1540<br>stamoulis@swdelaw.com<br>weinblatt@swdelaw.com |
| | |
| | *Attorneys for Plaintiff*<br>*Incarcerated Entertainment, LLC* |

12

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I electronically filed the above document(s) with the Clerk of Court using CM/ECF, which will send electronic notification of such filing(s) to all registered counsel.

                                                */s/ Richard C. Weinblatt*
                                                Richard C. Weinblatt