# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INCARCERATED ENTERTAINMENT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-480-VAC-MPT |
| | ) |
| CNBC LLC, NBCUNIVERSAL MEDIA, LLC, | ) |
| KURTIS PRODUCTIONS, LTD., HULU, LLC, | ) |
| GOOGLE LLC, APPLE INC., and | ) |
| AMAZON.COM, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Dated: July 11, 2018

Thomas E. Hanson, Jr., Esq. (#4102)
Barnes & Thornburg LLP
1000 N. West Street, Suite 1500
Wilmington, DE 19801-1050
Phone: (302) 300-3447
Email: thanson@btlaw.com

Nathan Siegel, Esq.
Constance Pendleton, Esq.
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006
Phone: (202) 973-4200
Fax: (202) 973-4499
Email: nathansiegel@dwt.com
             conniependleton@dwt.com

Taaj Reaves, Esq.
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8349
Email: taajreaves@dwt.com

*Attorneys for Kurtis Productions, Ltd., CNBC LLC, NBCUniversal Media, LLC, Amazon.com, Inc., and Hulu, LLC*

## TABLE OF CONTENTS

**Page**

A. PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLY FALSE OR MISLEADING STATEMENT BY DEFENDANTS ............................................. 1

B. COUNT XIV IS ALSO BARRED BECAUSE ADVERTISEMENTS SUMMARIZING THE CONTENTS OF EXPRESSIVE WORKS ARE NOT COMMERCIAL SPEECH ............................................................................ 3

C. CONCLUSION ....................................................................................................... 8

## **TABLE OF CITATIONS**

**Page(s)**

**Federal Cases**

*Ad World, Inc. v. Twp. of Doylestown*,
    672 F.2d 1136 (3d Cir. 1982)..................................................................................................7

*Bolger v. Youngs Drug Products Corp.*,
    463 U.S. 60 (1983)................................................................................................................4, 5

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*,
    412 U.S. 94 (1973)...................................................................................................................7

*Connick v. Myers*,
    461 U.S. 138 (1983)..................................................................................................................4

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)...................................................................................................4

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (3d Cir. 2002).......................................................................................................4

*First Health Grp. Corp. v. BCE Emergis Corp.*,
    269 F.3d 800 (7th Cir. 2001) ...................................................................................................4

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
    859 F. Supp. 1521 (S.D.N.Y. 1994).............................................................................2, 3, 4, 5

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)..........................................................................................1, 2, 3, 6

*Handsome Brook Farm, LLC v. Humane Care Animal Farm, Inc.*,
    193 F. Supp. 3d 556 (E.D. Va. 2016) ......................................................................................4

*Incarcerated Entertainment LLC v. Warner Bros. Pictures*,
    261 F. Supp. 3d 1220 (M.D. Fla. 2017)...................................................................................4

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer
    Pharms., Inc.*,
    19 F.3d 125 (3d Cir. 1994).......................................................................................................1

*Lane v. Random House, Inc.*,
    985 F. Supp. 141, 147 (D.D.C. 1995) ..................................................................................6, 7

*Miramax Films Corp. v. Columbia Pictures Entm't, Inc.*,
    996 F. Supp. 294 (S.D.N.Y. 1988) ..........................................................................................2

*Reybold Grp. of Cos., Inc. v. Does 1-20*,
    323 F.R.D. 205 (D. Del. 2017) ..................................................................................................4

*Schmidt, Long & Assoc. v. Aetna U.S. Healthcare, Inc.*,
    2001 WL 856946 (E.D. Pa. July 26, 2001)..............................................................................6

*Seale v. Grammercy Pictures*,
    949 F. Supp. 331 (E.D. Pa. 1996) ............................................................................................5

**State Cases**

*Guglielmi v. Spelling-Goldberg Prods.*,
    603 P.2d 454 (Cal. 1979) .........................................................................................................7

*Lacoff v. Buena Vista Publ'g*,
    705 N.Y.S.2d 183 (Sup. Ct. N.Y. Cty. 2000) ......................................................................1, 6

**Constitutional Provisions**

U.S. Const. amend. I............................................................................................................ *passim*

**Federal Statutes**

15 U.S.C. § 43(a) ............................................................................................................................1

15 U.S.C. § 1125(a)(1)(B) ..............................................................................................................3

Plaintiff's Response maintains that its Lanham Act theory is not an effort to effect an end-run around the First Amendment. But the substance of Plaintiff's arguments makes clear that is exactly what it is. In Plaintiff's own words, the gravamen of its claim is that "the episode is not true and the statement about the ammunition being 'bad' is one piece of evidence that the episode is not a true depiction." D.I. 45 at 11. That assertion is indistinguishable from what would be necessary to plead the element of falsity if a plaintiff were alleging that the Documentary is defamatory. Otherwise, Plaintiff fails to meaningfully respond to the two independent grounds for dismissal that Defendants raised in their motion.

### A.   PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLY FALSE OR MISLEADING STATEMENT BY DEFENDANTS

First, the advertisements challenged by Plaintiff accurately summarize what the Documentary itself purports to be, so Count XIV fails to allege any false or misleading statement "as to its products, or those of the plaintiff," which is the first element of a false advertising claim under the Lanham Act. *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994). Plaintiff's Response amounts to the proposition that it has a claim for false advertising under Section 43(a) because it alleges that an interview excerpt accusing Diveroli of selling "bad ammunition" is "literally false" and appears in a couple of promotional video clips. D.I. 45 at 7-8. But the Lanham Act "does not prohibit false statements generally," including in advertising. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995).

Rather, as Defendants' motion pointed out, "in this context . . . it is important to distinguish between advertising statements made to summarize an argument or opinion *within* a book and those made *about* a book as a product." *Id. See also Lacoff v. Buena Vista Publ'g*, 705 N.Y.S.2d 183, 190 (Sup. Ct. N.Y. Cty. 2000). Only the latter may potentially constitute a false

or misleading statement for purposes of a false advertising claim.  Plaintiff does not appear to take issue with this point, but rather offers the conclusory assertion that the statements at issue are statements about the episode as that concept is used in *Groden*.  D.I. 45 at 7.  That is plainly not so.

The expert's statement that AEY sold "bad ammunition" is a point made in the Documentary, and indeed that particular video excerpt actually appears in the program.  D.I. 39, Ex. 1 at 0:40-0:50.  Similarly, the Documentary begins by telling viewers that it is a true story (the narrator says that it tells the "real" story of the "real War Dogs.").  *Id.* at 02:40.  Thus, the statements at issue merely summarize points made within the Documentary, and thus accurately represent to potential viewers what the Documentary purports to be.

By contrast, as Defendants also explained in their motion to dismiss, an example of a statement about a film "as a product" would be a representation about some objective fact connected with its production, such as the name of the director.  *See, e.g.*, *Miramax Films Corp. v. Columbia Pictures Entm't, Inc.*, 996 F. Supp. 294 (S.D.N.Y. 1988).  Indeed, the facts presented in *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994), which Plaintiff cites extensively, also illustrate the distinction.  In *Gordon & Breach*, a publisher of scientific journals sued a competing publisher, alleging claims for false advertising.  The Court held that most of the plaintiff's claims were barred by the First Amendment because they related to the contents of articles.  *Id.* at 1539-43.  The only false advertising theory the Court held was potentially actionable concerned the promotional use of a study which made representations about the relative price of the journals and the number of times they had been cited in other scientific literature.  *Id.* at 1523, 1543-45.

Promotional statements about the relative price or objective popularity of an expressive work are also examples of statements "about a [work] as a product," rather than an "argument or opinion within a [work]." Defendants' motion does not contend that media companies are free to mispresent the price of their services or the awards that their programs have won. But Plaintiff alleges no such misrepresentations. Rather, Plaintiff contends that "the episode is not true and the statement about the ammunition being 'bad' is one piece of evidence that the episode is not a true depiction." D.I. 45 at 11. That theory is just like the one rejected in *Groden*, where the plaintiff alleged that the advertisement was false because the Warren Commission's single-shooter theory was wrong. *Groden*, 61 F.3d at 1052.

Thus, Defendants' motion should be granted because the Complaint fails to plausibly allege any false or misleading advertising of the Documentary. Indeed, *Gordon & Breach* emphasized the importance of granting motions to dismiss Lanham Act claims like the one alleged here, because:

> Commercial plaintiffs should not be allowed to make use of the Lanham Act to gain access to court-sanctioned discovery unless they have made a prima facie showing that speech which appears fully protected is in fact undeserving of full First Amendment protection. Allowing such suits to proceed without such a showing could cast a substantial chill on the "robust exchange of ideas," that is essential to the health of the university environment.

*Gordon & Breach*, 859 F. Supp. at 1243 (internal citation omitted).

### B. COUNT XIV IS ALSO BARRED BECAUSE ADVERTISEMENTS SUMMARIZING THE CONTENTS OF EXPRESSIVE WORKS ARE NOT COMMERCIAL SPEECH

Plaintiff also fails to allege the threshold requirement for a false advertising claim under the Lanham Act, that the statements at issue constitute "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Plaintiff maintains that this jurisdiction follows the *Gordon & Breach* test to determine whether statements constitute "commercial advertising or promotion"

3

for purposes of the Act.  D.I. 45 at 6.  Even assuming that is so, as Plaintiff notes, the first element of that test requires that the defendant's statements constitute "commercial speech" as defined by the First Amendment.  *Id. (*citing *Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 210 (D. Del. 2017).[1]

Plaintiff argues that whether speech should be classified as commercial or non-commercial is a question of fact, citing a single unpublished decision from a federal district Court in Texas.  D.I. 45 at 10.  It is not a question of fact; rather, in this Circuit, "the categorization of speech is a question of law."  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008).  *See also Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact.").  Plaintiff further argues that Defendants' advertisements are "commercial speech" because it maintains they satisfy the three-part test articulated in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983), and implicitly asks this Court to follow the reasoning of *Incarcerated Entertainment LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220 (M.D. Fla. 2017).

If Plaintiff's analysis were correct, then all books, magazines, movies, television programs, and other non-fictional works disseminated by anyone would be actionable under the Lanham Act, as long as a plaintiff alleged that advertising the works as "non-fiction" (i.e., a "true

---

[1] The Third Circuit has never actually adopted the four-part test in *Gordon & Breach*, and other courts have pointed out that at least one element of the test – the requirement that the parties be competitors – has likely been called into question by subsequent Supreme Court precedent.  *See, e.g.*, *Handsome Brook Farm, LLC v. Humane Care Animal Farm, Inc.*, 193 F. Supp. 3d 556, 570 (E.D. Va. 2016) (citing cases).  However, the precise parameters of what constitutes "commercial advertising or promotion" under the Lanham Act need not be resolved here, because courts widely agree that at a minimum the statements at issue must be "commercial speech" as defined by the First Amendment.  *See, e.g.*, *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (3d Cir. 2002); *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001).

story") was false because the work was allegedly not a true story. That would effectively eviscerate the First Amendment's limits on civil causes of action challenging allegedly false speech, a point to which Plaintiff offers no meaningful response.

Defendants' motion cited numerous cases holding that, in order to avoid that outcome, whether advertisements for expressive works may be treated as commercial speech for purposes of the First Amendment, depends on the nature of the plaintiff's claim. For purposes of false advertising claims (and, in most circumstances, right of publicity claims), courts have consistently held that advertisements for expressive works may not be treated as commercial speech as long as they accurately convey or summarize some aspect of the underlying work. *See* D.I. 38 at 13-15 (citing cases); *see also Seale v. Grammercy Pictures*, 949 F. Supp. 331, 336 (E.D. Pa. 1996) ("[U]se of a person's name and likeness to advertise a novel, play, or motion picture concerning that individual is not actionable as an infringement of the right of publicity."). *Bolger* did not address all the nuances of how the commercial speech doctrine applies to advertisements for expressive works, and indeed the Supreme Court has never addressed the doctrine in that context. Generally, however, "the [Supreme] Court has treated disparate situations involving mixed commercial and noncommercial speech in disparate ways, looking to the essential nature of the speech in question." *Gordon & Breach*, 859 F. Supp. at 1540. In *Bolger*, "the context was a pharmaceutical company's advertising campaign" for tangible products. *Id.* The Court even noted that "a different conclusion may be appropriate in a case where the pamphlet advertises an activity itself protected by the First Amendment." *Bolger*, 463 U.S. at 67 n.14. That scenario is the one presented by this case, and so the advertisements at issue may not be treated as commercial speech for purposes of a false advertising claim.

5

Plaintiff offers no response at all to this fundamental point. Instead, Plaintiff attempts to distinguish *Groden* by claiming that the Kennedy assassination and Babe Ruth's home run involved "murky facts," whereas it contends there is "nothing open to interpretation" about whether AEY sold "bad ammunition," citing the testimony of a weapons expert. D.I. 45 at 8. Even if that were so, it would make no difference as a legal matter. The reason for treating advertisements for expressive works as noncommercial speech in these circumstances is not related to how "murky" the underlying facts may or may not be. Rather, factual "murkiness" might relate to the different issue, which the Court need not reach here, of whether an advertisement expresses an opinion, since opinions are not actionable under the Lanham Act regardless of what is being advertised. *See, e.g.*, *Groden*, 61 F.3d at 1051-52; *Schmidt, Long & Assoc. v. Aetna U.S. Healthcare, Inc.*, 2001 WL 856946, at *11 (E.D. Pa. July 26, 2001) ("personal opinions on nonverifiable matters" are not actionable under the Lanham Act under any circumstances).[2]

Plaintiff also tries to distinguish *Lacoff* because it involved a state-law false advertising claim and a book cover and flyleaf. D.I. 45 at 8-9. But the Court held that, even if a book cover could be considered an advertisement, the principles articulated in *Groden* and *Lane* would preclude the claim. *Lacoff*, 705 N.Y.S.2d at 189-92.

---

[2] Plaintiff's argument also fails as a factual matter. It is ironic that Plaintiff cites the testimony of a weapons expert as proof that something is not "open to interpretation, given that numerous ballistics experts have weighed in on all sides of the debate over the Kennedy assassination. In any event, as a factual matter, Lee Harvey Oswald either was or was not acting alone, and Babe Ruth either did or did not call his shot. While it may be difficult to prove what happened, the events themselves were not "murky" and are at least potentially verifiable. By contrast, the weapons expert Plaintiff cites testified about bullets manufactured in 1962 in the People's Republic of China, D.I. 45-1 at 12, and merely said on cross-examination that one he tested "fired as it was designed to fire." *Id.* at 21-22. Even taking that testimony at face value, whether defrauding the U.S. military by selling it 50-year-old Chinese bullets constitutes selling "bad ammunition" is at least as "open to interpretation" as the determination of what really happened in historical events.

Plaintiff further argues that the purpose of the challenged advertisements was to "increase viewership" of the Documentary.  D.I. 45 at 1.  That merely summarizes the purpose of all advertising; it does not respond to the point that creators of expressive works have the freedom to advertise them for precisely that purpose, as long as they do not misrepresent what the work itself purports to be.  *See Lane v. Random House, Inc.*, 985 F. Supp. 141, 147 (D.D.C. 1995) ("It would be illogical to allow respondents to exhibit [speech products] but effectively preclude advance discussion or promotion of their lawful enterprise.") (quoting *Guglielmi v. Spelling-Goldberg Prods.*, 603 P.2d 454, 462 (Cal. 1979)).  More broadly, the fact that media content is often produced for profit does not make it any less protected by the First Amendment.  *Ad World, Inc. v. Twp. of Doylestown*, 672 F.2d 1136, 1139 (3d Cir. 1982) ("The fact that a publication carries advertisements or that it is for profit does not render its speech commercial for first amendment purposes.").

Plaintiff also argues that it has been injured because people looking for the "true story" preferred the Documentary to Diveroli's book.  That is not an "injury" that the law recognizes in these circumstances; the very purpose of a "marketplace of ideas" is to permit different and often competing versions of history to be disseminated so that "truth will ultimately prevail" through public debate, rather than litigation.  *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 184 (1973).

Finally, Plaintiff does not dispute that dismissing Count XIV would substantially narrow the scope of discovery in this case.  And since Count XIV fails to state a claim, that is yet another practical reason to dismiss it now.

7

C. **CONCLUSION**

For the foregoing reasons, Defendants Kurtis, NBC, and CNBC respectfully request that Count XIV of the Complaint be dismissed, with prejudice.

Dated: July 11, 2018

                                Respectfully submitted,

                                **BARNES & THORNBURG LLP**

                                */s/ Thomas E. Hanson, Jr.*
                                Thomas E. Hanson, Jr., Esq. (#4102)
                                1000 N. West Street, Suite 1500
                                Wilmington, DE 19801-1050
                                Phone: (302) 300-3447
                                Fax: (302) 300-3456
                                Email: thanson@btlaw.com

                                **DAVIS WRIGHT TREMAINE LLP**

                                Nathan Siegel, Esq.
                                Constance Pendleton, Esq.
                                1919 Pennsylvania Avenue, N.W., Suite 800
                                Washington, D.C. 20006
                                Phone: (202) 973-4200
                                Fax: (202) 973-4499
                                Email: nathansiegel@dwt.com
                                        conniependleton@dwt.com

                                Taaj Reaves, Esq.
                                1251 Avenue of the Americas, 21st Floor
                                New York, New York 10020
                                Phone: (212) 489-8230
                                Fax: (212) 489-8349
                                Email: taajreaves@dwt.com

                                *Attorneys for Kurtis Productions, Ltd., CNBC LLC, NBCUniversal Media, LLC, Amazon.com, Inc., and Hulu, LLC*