IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INCARCERATED ENTERTAINMENT, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 18-480 |
| CNBC LLC, NBCUNIVERSAL MEDIA, LLC, KURTIS PRODUCTIONS, LTD., HULU, LLC, GOOGLE LLC, APPLE INC., AND AMAZON.COM, INC. | : | |

## MEMORANDUM

**KEARNEY, J.** August 2, 2018

A television network advertising a show purporting to describe the "true" story of disputed historical events must be careful to not misrepresent the specifics of its show so as to mislead the consumer concerning its product. Summarizing an argument or opinion offered *within* the show is different than a statement made *about* a show as a product such as its length, characters or producers. When the advertisement represents the show as the "true story" of disputed historical events as specifically stated in the show and is motivated by significant economic benefits, it is commercial speech subject to the Lanham Act. The viewer can agree or disagree with the speaker's theories after viewing the show. But we cannot find the advertisement summarizing a theory expressed in the show is false and misleading advertising violating the Lanham Act. We grant the television networks' and producer's motion to dismiss the Lanham Act unfair competition claim in the accompanying Order.

I. **Alleged Facts**

Eighteen year old Efraim Diveroli owned a defense contracting business, AEY, Inc. specializing in arms, ammunition trading, and bidding on small United States defense contracts [1].

AEY supplied the United States weapons and munitions under more than 100 government contracts.[2] In 2007, the United States bid out a "massive contract" to arm the Afghan army and its related police forces to fight the Taliban and Al Qaeda.[3] The United States chose AEY over more established contractors like Northrop Grumman and Lockheed Martin to fulfill the $298M weapons and munitions contract.[4]

In 2008, the United States suspended AEY's contracts believing AEY violated arms embargos by obtaining ammunition from China.[5] A federal grand jury indicted Mr. Diveroli on fraud charges and he plead guilty to conspiracy.[6] Mr. Diveroli served a forty-eight-month sentence.[7]

While incarcerated, Mr. Diveroli wrote a memoir entitled "Once a Gun Runner…" describing his experience as a "gun runner."[8] Mr. Diveroli wrote the first draft in January 2012 and completed the memoir in June 2014.[9] In February 2014, Mr. Diveroli began marketing the rights to his life story.[10] Mr. Diveroli registered his manuscript with the United States Copyright Office.[11] Incarcerated Entertainment, LLC owns the copyright registrations by assignment.[12] Incarcerated also owns Mr. Diveroli's other copyright registrations including photographs of Mr. Diveroli, dating back to his early childhood, and Mr. Diveroli's life story.[13]

In August 2016, Warner Bros. Pictures released, distributed, and promoted a film entitled *War Dogs*. Warner Bros. promoted the *War Dogs* film as being based on Mr. Diveroli's life story, specifically Mr. Diveroli's experience as a government contractor supplying weapons and munitions to the United States. It allegedly did very well in ticket sales.

Beginning in December 2016, Incarcerated discussed producing and distributing a documentary based on Mr. Diveroli's life story in his memoir.[14]

In January 2017, in its made-for-television crime series *American Greed,* CNBC broadcasted an episode entitled "The Real 'War Dogs'" which similarly focused on Mr. Diveroli's experience as a government contractor.[15] The "Real" in the episode title appears to draw a contrast with the 2016 *War Dogs* film. Kurtis Productions, Ltd. produced this episode for CNBC and NBCUniversal.[16] CNBC promoted *American Greed* as a "shocking true crime series [that] examines the dark side of the American dream" and "tak[ing] you deep inside shocking true stories of brazen con artists who thrive on stealing fortunes, ruining and even taking lives."[17]

CNBC also broadcasted a video advertisement for the "The Real 'War Dogs'" *American Greed* episode.[18] The advertisement contains a video clip from an interview included in the episode with a comment Mr. Diveroli got rich selling "bad ammunition while people the same age as him are taking the sacrifices. Despicable."[19]

## II. Analysis

Incarcerated sues CNBC, Kurtis Productions, NBCUniversal Media, LLC, Hulu, LLC, Google, LLC, Apple, Inc., and Amazon.com, Inc. under the Copyright Act of 1976 and the Lanham Act. While the Lanham Act focuses on protecting the general public by prohibiting the deceptive and misleading use of trademarks, the Act reaches beyond trademark infringement.[20] The Act also prohibits unfair competition through false or misleading advertisements of goods and services.[21] The Act protects the general public from two types of unfair competition: (1) using false and misleading words, symbols, or representations of fact which cause confusion in the marketplace as to the association or affiliation between different persons or products; and (2) using false and misleading words, symbols, or representations of fact in an advertisement or promotion misrepresenting the nature, qualities, or origin of goods or services.[22]

3

Today we focus on Incarcerated's claims CNBC, Kurtis, and NBCUniversal violated the Lanham Act by making false statements in their advertisements for the *American Greed* episode "The Real 'War Dogs.'"

CNBC, Kurtis, and NBCUniversal move to dismiss Incarcerated's unfair competition claim under the Act.[23] They argue Incarcerated fails to plead the *American Greed* advertisement is false. They argue the advertisement accurately represents the *American Greed* episode and therefore does not include an actionable false statement under the Act. They argue the statements in the advertisement are pulled directly from an expressive work (the television show) and therefore the advertisement is protected under the First Amendment. They argue Incarcerated is attempting to assert a quasi-defamation claim by challenging the factual accuracy of the episode through an improper attack of the advertisement under the Act.

Incarcerated responds the advertisement representing *American Greed* presents Mr. Diveroli's true story is false. Incarcerated claims Mr. Diveroli's memoir presents Mr. Diveroli's true story. As an example of a false representation in *American Greed* about Mr. Diveroli's life story, Incarcerated cites to a statement in an advertisement about Mr. Diveroli selling "bad ammunition" to the United States. Incarcerated asserts Mr. Diveroli did not sell bad ammunition to the United States. Incarcerated claims consumers who want to learn Mr. Diveroli's true story are likely to watch *American Greed*, instead of purchasing Mr. Diveroli's memoir. Incarcerated concedes if the advertisement claimed the *American Greed* episode is "based on a true story," its claim under the Act would not be viable. But Incarcerated argues the affirmative representation the episode presents the true story of Mr. Diveroli brings its claim within the Act's reach.

### A. The statement the television series *American Greed* presents "true stories" is "commercial advertising or promotion" subject to the Act.

In the false advertising context, the Act applies to "commercial advertising or promotion."[24] Whether a statement is "commercial advertising or promotion" is a threshold issue to determine whether a statement is actionable under the Act. Courts use the *Gordon & Breach* test to determine whether a statement at issue is "commercial advertising or promotion" under the Act.[25] In *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, the court defined "commercial advertising or promotion" as "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendants goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."[26]

CNBC, Kurtis, and NBCUniversal argue the statement American Greed presents "true stories" is not commercial speech and therefore not subject to the Act. They argue the statement is pulled directly from the television show, which they categorize as an expressive work. They argue the advertisements should be afforded the same constitutional protections under the First Amendment as the underlying expressive work. Incarcerated argues the statement describing the television show as depicting Mr. Diveroli's true story is commercial speech.

Commercial speech is not accorded the same First Amendment protection as noncommercial speech, occupying a "subordinate position in the scale of First Amendment values."[27] When looking through the lens of the Act, as the Supreme Court in *New York Times Co. v. Sullivan* stated in a case about libel brought by a public official against critics of his official conduct, whatever the court adds to the field of commercial speech "is taken from the field of free debate."[28] Contrary to Incarcerated's claim, we can decide whether the statement

constitutes commercial speech as a matter of law. Our court of appeals in *Facenda v. N.F.L. Films, Inc.* explained "[c]ategorization of speech is a question of law."[29]

Our court of appeals provides substantial guidance on the parameters of commercial speech.[30] Commercial speech is "broadly defined expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for the sale of goods and services."[31] Following United States Supreme Court guidance, our court of appeals outlined a three factor test to determine whether speech is commercial:[32] "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech."[33] Satisfaction of all three characteristicss provides "strong support" for concluding the speech is commercial.[34] In sum, the "commercial speech doctrine rests heavily on 'the common sense distinction between speech proposing a commercial transaction . . . and other varieties of speech.'"[35]

The district court in *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics* examined speech characterized as involving mixed commercial and noncommercial speech.[36] In *Gordon & Breach*, a for-profit publisher of a scientific journal, sued two non-profit publishers of scientific journals for false advertising under the Act.[37] The defendant published articles by a physics professor which included a survey, the accuracy of which the plaintiff disputed, ranking selected journals on the basis of "cost-effectiveness" and "impact."[38] The defendants' journals ranked near the top while the plaintiff's journals ranked at or near the bottom.[39] The defendants distributed the survey results through a variety of channels.[40]

The court granted in part and denied in part the defendants' motion to dismiss claims brought under the Act.[41] Wary of the "chilling effect on speech in the academic and non-profit context," the court determined the articles constituted protected speech.[42] Our court of appeals

6

has stated commercial speech is less likely to encounter the chilling effect issue because of the speaker's economic self-interest in dissemination.[43] This economic self-interest, "may make it less necessary to tolerate inaccurate statements for fear of silencing the speaker."[44]

But the district court in *Gordon & Breach* found dissemination of the articles—promotional uses of the protected speech—constituted commercial speech.[45] The court offered an example to illustrate its point: a motor vehicle manufacturer may create a television advertisement (commercial speech) touting its first-place rank in a consumer magazine article (noncommercial speech).[46] The manufacturer may be sued under the Act, and the consumer magazine's "testing methodology may become subject to judicial scrutiny to determine whether [the manufacturer] used in commerce a false or misleading representation of fact."[47] The same reasoning applies to cases where the entity disseminating the speech is the same entity which initially created the protected speech.[48] The categorization of the disseminated speech does not change.[49]

The court examined the Supreme Court's precedent on commercial speech, finding it treated different situations involving mixed commercial and noncommercial speech in different ways, looking to the "essential nature of the speech in question."[50] For example, in *Bolger v. Youngs Drug Products Corp.*, the United States Postal Service prohibited a contraceptives manufacturer from mailing unsolicited informational flyers and pamphlets about their products.[51] The Supreme Court found the flyers and pamphlets constituted core commercial speech and refused to allow the manufacturer to "mask the essentially commercial nature of its enterprise by adding informational content."[52] In *Riley v. National Federation of the Blind*, professional fundraisers claimed a North Carolina law infringed their freedom of speech by requiring disclosure of the percentage of money actually turned over to charities the previous year.[53] In

7

this "ambiguous" charitable fundraising context with public interest issues at play beyond the "narrowly commercial," the district court deemed the speech noncommercial and "invest[ed] the fundraisers' speech with full First Amendment protection."[54]

Incarcerated pleads the statement of Mr. Diveroli's "true" story is commercial speech. The promotional statement on CNBC's website is an advertisement. CNBC, Kurtis, and NBCUniversal refer to it as such in their briefing. The promotional statement refers to a specific product, the *American Greed* television show. CNBC, Kurtis, and NBCUniversal created the promotional statement to convince viewers to watch *American Greed*, including the "The Real 'War Dogs'" episode. It is hard to imagine a purpose other than economic motivation to promote to potential viewers they can learn the "true" story behind a "based on a true" *War Dogs* film by watching the *American Greed* episode. The title of the *American Greed* episode specifically referencing the film *War Dogs* further supports this view. The Defendants' choice of wording in the title implies the *War Dogs* film did not provide Mr. Diveroli's true story, but the *American Greed* episode will present the true story. Capturing the potential viewers' attention and capitalizing on the popularity of the film *War Dogs*, the advertisement attempted to attract viewers to CNBC for economic gain by telling them "The Real 'War Dogs'" depicted Mr. Diveroli's "true" story.

Citing the video advertisement for "The Real 'War Dogs'" episode incorporating video clips from the *American Greed* episode, CNBC, Kurtis, and NBCUniversal argue the "bad ammunition" statement is afforded First Amendment protection because the underlying episode is an expressive work. They argue the protection exists as long as the advertisement does not misrepresent the underlying work. They argue the use of Mr. Diveroli's name, likeliness and

story in the advertisement is protected incidental use of constitutionally protected noncommercial speech.

This argument fails. We are addressing a limited representation in the advertisement. In its briefing, Incarcerated narrows its claim to the advertisement's statement the television show depicts Mr. Diveroli's "true" story. Incarcerated does not raise a Lanham Act claim based upon the advertisement's use of Mr. Diveroli's name, likeliness and story. Incarcerated cites the "bad ammunition" statement as an example of how the "The Real 'War Dogs'" episode does not actually present Mr. Diveroli's true story, but does not cite the statement as actionable under the Act.

Incarcerated pleads the statement "true story" is commercial speech. CNBC, Kurtis, and NBCUniversal do not challenge Incarcerated's complaint under the remaining elements of the *Gordon & Breach* test. Incarcerated pleads the statement *American Greed* presents Mr. Diveroli's true story is "commercial advertising or promotion."

The Act governs commercial speech. The question is whether advertising the show as a "true story" violates the Act.

### B. Incarcerated fails to plead a false or misleading statement under the Act.

CNBC, Kurtis, and NBCUniversal argue Incarcerated failed to plead a false or misleading statement under the Act because the advertisement accurately presents what the *American Greed* episode purports to be, Mr. Diveroli's true story. They argue the statement the episode presents Mr. Diveroli's true story is not false or misleading because in the episode's opening, the narrator tells viewers the story presented is a "real" story. They argue the advertisement merely summarizes a point made *within* the episode. Incarcerated argues the "true

9

story" statement is a statement *about* the episode, not a statement *within* the episode. It argues false or misleading statements *about* the episode are actionable under the Act.

Congress enacted the Act to regulate consumer and commercial interests.[55] Congress enacted Section 43(a) of the Act "because honesty and fair play are prominent arrows in America's quiver of commercial and personal ideals."[56] The intent of the Act is to "stop the kind of unfair competition that consists of lying about goods and services."[57] The Act provides a private remedy "to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising."[58] Liability under the Act arises when the commercial statement is either "(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers."[59]

To plead an unfair competition claim based on false advertising, a plaintiff must allege (1) the defendant made false or misleading statements as to its own product or another's; (2) the statements actually deceive or "at least [have] a tendency to deceive a substantial portion of the intended audience;" (3) "the deception is material in that it is likely to influence purchasing decisions;" (4) "the advertised goods traveled in interstate commerce;" and (5) "there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc."[60] Incarcerated fails to plead an unfair competition claim based on the representation in the advertisement the *American Greed* episode presents Mr. Diveroli's true story.

In *Groden v. Random House, Inc.*, a book author sued another author under the Act alleging an advertisement for the book contained a false or misleading statement.[61] The defendant's book attempted to refute conspiracy theories surrounding the assassination of President John F. Kennedy.[62] The defendant criticized the plaintiff's theory in the book.[63] In the plaintiff's book, the plaintiff presented the theory several people conspired to assassinate the

10

President.[64] In the defendant's book, the defendant argued the Warren Commission correctly concluded one man acted alone in assassinating President Kennedy.[65] The publisher of the defendant's book advertised the book in the New York Times.[66] The advertisement contained the names, photographs, and quotations from six authors, including the plaintiff, who wrote books on conspiracy theories surrounding the Kennedy assassination.[67] Above the authors' photographs, the advertisement stated "GUILTY OF MISLEADING THE AMERICAN PUBLIC."[68] Below the photographs and quotes the advertisement summarized the defendant's thesis presented in the advertised work. The advertisement stated, "ONE MAN. ONE GUN. ONE INESCAPABLE CONCLUSION."[69]

The plaintiff author sued under the Act arguing the "guilty of misleading" and the "inescapable conclusion" statements are both false. The court explained the Act "does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services."[70] The court further stated "it is important to distinguish between advertising statements made to summarize an argument or opinion *within* a book and those made *about* a book as a product. The former are essentially a matter of argument, to be accepted or rejected by those who read the book, while the later might often be statements of fact that might be verifiable. Only in the latter case will the statements possibly violate the [Act]."[71]

The court found the "guilty of misleading statement" to be an opinion statement not actionable under the Act.[72] The court found the "inescapable conclusion" statement not false or misleading.[73] The court found the statement accurately described the thesis of the advertised work.[74] The court further explained, "[n]o matter what the true facts might be concerning the Kennedy assassination, the ad's statements said nothing false about [the defendant's] book."[75]

11

The court warned applying the Act to the advertisement "would raise substantial free speech issues."[76] The court stated "ample leeway must be accorded to statements that advertise books by expressing opinions, no matter how extravagantly worded, about the merits of opposing viewpoints."[77]

This same reasoning applies to the advertisement describing the content of the *American Greed* episode as the true story. The advertisement tells potential viewers the show will present the "true" story of Mr. Diveroli. Incarcerated cites to a statement in the advertisement excerpted from the episode claiming Mr. Diveroli sold "bad" ammunition to the United States. Incarcerated alleges this statement is false and the presentation of the fact Mr. Diveroli sold bad ammunition to the United States is one example of how the *American Greed* episode does not present Mr. Diveroli's true story.

Citing *Groden*, CNBC, Kurtis, and NBCUniversal argues the statement the episode presents Mr. Diveroli's true story is not false or misleading because in the opening of the episode a narrator tells viewers the show presents Mr. Diveroli's real story. They argue the true story statement presents an argument within the episode similar to the "inescapable conclusion" statement in *Groden*. They argue Incarcerated's challenge to the factual accuracy of the bad ammunition statement is no different than the plaintiff's failed challenge to the "ONE MAN. ONE GUN. ONE INESCAPABLE CONCLUSION." statement in *Groden*.

The statement the episode presents a true story is a summarization of an argument or opinion within the episode. Similar to the competing theories whether a single person or group of persons conspired to assassinate President Kennedy presented by different authors in *Groden*, whether Mr. Diveroli sold "bad" ammunition to the United States is a matter of argument, to be accepted or rejected by the viewer of *American Greed*. The true story statement is not a

statement about the episode as a product. For example, the statement does not represent the duration of the episode, the episode's date of production or the narrators in the episode. These are verifiable statements of fact. Also similar to the unimportance "of what the true facts might be concerning the Kennedy assassination" in determining whether the advertisement included a false statement about the author's book in *Groden*, whether Mr. Diveroli sold bad ammunition to the United States does not render the statements in the advertisement false or misleading. Incarcerated fails to allege the *American Greed* episode does not present itself to viewers as telling them Mr. Diveroli's true story. The advertisement tells potential viewers the episode presents the real story, which includes Mr. Diveroli selling "bad" ammunition to the United States. Whether Mr. Diveroli sold bad ammunition to the United States is a matter of argument which a viewer may reject or accept after viewing the episode. Incarcerated fails to plead a false or misleading statement in the advertisement.

Allowing Incarcerated to proceed on the merits of its claim under the Act as pleaded would require we review at summary judgment or a jury determine at trial the merits of whether Mr. Diveroli sold bad ammunition to the United States over ten years ago. The Lanham Act claim presented today would quickly turn into a fraud and conspiracy trial surrounding Mr. Diveroli's dealings with the United States which may have already been addressed in the criminal matter leading to Mr. Diveroli's incarceration. We will not allow Incarcerated to re-litigate the merits of Mr. Diveroli's criminal plea. We dismiss Incarcerated's claim under the Act without prejudice in the event Incarcerated can, under Rule 11, plead facts supporting a false advertising claim.[78]

## III. Conclusion

Incarcerated fails to plead a false advertising claim under the Act based on the representation in the advertisement the *American Greed* episode presents Mr. Diveroli's true story. In the accompanying Order, we grant CNBC, Kurtis, and NBCUniversal's partial motion to dismiss. We dismiss Incarcerated's Lanham Act claim without prejudice should it be able, under Rule 11 and consistent with this Memorandum, to plead facts to support its false advertisement claim.

---

[1] ECF Doc. No. 1 ¶ 14.

[2] *Id.* ¶ 15.

[3] *Id.* ¶ 16.

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 18.

[6] *Id.* ¶¶ 18, 19.

[7] *Id.* ¶ 20.

[8] *Id.* ¶ 216.

[9] *Id.* ¶ 217.

[10] *Id.* ¶ 217.

[11] *Id.* ¶¶ 216, 217.

[12] *Id.* ¶ 218.

[13] *Id.* ¶¶ 215, 216, 217.

[14] *Id.* ¶ 222.

[15] *Id.* ¶¶ 33, 43.

[16] *Id.* ¶ 34

[17] *Id.* ¶¶ 33, 223.

[18] *Id.* ¶ 41.

[19] *Id.* ¶ 42.

[20] *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003).

[21] *See* 15 U.S.C. § 1125(a).

[22] *See id.*

[23] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[24] 15 U.S.C. § 1125(a)(1)(B); *see also Novartis Consumer Health, Inc.*, 290 F.3d at 586.

[25] *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274, 286 (E.D. Pa. 2011) (collecting cases).

[26] *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)

[27] *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758 n.5 (1985) (quoting *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 456 (1978)).

[28] *Gordon & Breach Sci. Publishers*, 859 F. Supp. at 1543 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 272 (1964)).

[29] *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008)

[30] *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990).

[31] *Id.* (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980)).

[32] *Facenda*, 542 F.3d at 1017 (quoting *U.S. Healthcare, Inc.*, 898 F.2d at 933).

[33] *U.S. Healthcare, Inc.*, 898 F.2d at 933 (citing *Bolger*, 463 U.S. at 66-67).

[34] *Id.* (citing *Bolger*, 463 U.S. at 67); *accord American Future Sys., Inc. v. Pennsylvania State Univ.*, 752 F.2d 854, 862 (3d Cir. 1984)).

[35] *Id.* (citing *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637 (1985)).

[36] 859 F. Supp. at 1540.

[37] *Id.* at 1523.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 1526-27.

[41] *Id.* at 1542, 1543.

[42] *Id.* at 1542.

[43] *U.S. Healthcare, Inc.*, 898 F.2d at 934 (citing *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 564).

[44] *Id.* (quoting *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 772 n. 24 (1976)).

[45] 859 F. Supp. at 1544.

[46] *Id.*

[47] *Id.* (internal quotations omitted).

[48] *Id.* at 1544-45.

[49] *Id.*

[50] *Id.* at 1540.

[51] *Bolger*, 463 U.S. at 62.

[52] *Id.* (citing *Bolger*, 463 U.S. at 68).

[53] *Riley v. National Federation of the Blind*, 487 U.S. 781, 786 (1988).

[54] 859 F. Supp. at 1540.

[55] *See* 15 USCS § 1125; *Serbin v. Ziebart Int'l Corp.*, 11 F.3d 1163, 1177 (3d Cir. 1993) (quoting *Sandoz Pharmaceuticals v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir. 1990).

[56] *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 941 (3d Cir. 1993).

[57] *Id.* (quoting *U-Haul International, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982)).

[58] *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 180 (3d Cir. 2001) (quoting *Serbin*, 11 F.3d at 1175).

[59] *Novartis Consumer Health, Inc.*, 290 F.3d 578, 586 (3d Cir. 2002) (citing *Castrol Inc.*, 987 F.2d at 943).

[60] *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (quoting *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000)); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994).

[61] 61 F.3d 1045 (2d Cir. 1995).

[62] *Id.* at 1048.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* (citations omitted).

[71] *Id.*

[72] *Id.* at 1051.

[73] *Id.* at 1052.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] In *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, Incarcerated sued under the Act in the Middle District of Florida. 261 F. Supp. 3d 1220 (M.D. Fl. 2017). Incarcerated argued Warner Bros.'s advertising campaign for the movie *War Dogs*, based on Mr. Diveroli's life story, falsely advertised the movie presented Mr. Diveroli's true story. The court denied Warner Bros.'s motion to dismiss the false advertising claim. The court explained Warner Bros. failed to address the relevant question "whether the statements, read in their full context, falsely or misleadingly portray *War Dogs* as a true story." *Id.* at 1232. The court explained determining whether the advertisement falsely portrayed the movie as presenting Mr. Diveroli's true story is a fact-intensive inquiry. *Id.*

Our case is different from *Warner Bros.* CNBC, Kurtis, and NBCUniversal have not ignored the relevant question. Incarcerated fails to allege the *American Greed* episode does not claim to present Mr. Diveroli's true story. Incarcerated did not dispute CNBC, Kurtis, and NBCUniversal's representation the episode tells viewers in the opening of the show it depicts Mr. Diveroli's real story. Incarcerated does not want to litigate a Lanham Act case. Rather, Incarcerated wants to re-litigate the merits of whether Mr. Diveroli, while a teenager, sold "bad" ammunition to the United States. The Lanham Act does not provide Incarcerated the legal basis to do so.